IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GWICH'IN STEERING COMMITTEE,
ALASKA WILDERNESS LEAGUE,
DEFENDERS OF WILDLIFE, and THE
WILDERNESS SOCIETY,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF THE INTERIOR,
U.S. BUREAU OF LAND MANAGEMENT,
and U.S. FISH AND WILDLIFE SERVICE,

*Defendants*.

Civ. A. No. 19-2978 (CJN)

## JOINT STATUS REPORT AND ORDER

The parties, by and through counsel, submit the following Joint Status Report pursuant to the Court's Order dated June 22, 2020.

### The Status of Plaintiffs' FOIA Requests

This matter involves a total of nine Freedom of Information Act (FOIA) requests that Plaintiffs submitted to three separate offices of the Department of the Interior: (1) four requests to the Alaska State Office of U.S. Bureau of Land Management (BLM); (2) four requests to the Office of the Secretary of the Department of the Interior (OS); and (3) a single request to the Alaska Region of the U.S. Fish and Wildlife Service (FWS).

Plaintiffs filed this case on July 31, 2019, in the U.S. District Court for the District of Alaska and the matter was transferred to the U.S. District Court for the District of Columbia on October 3, 2019. To date, Defendants have disclosed some records for all requests except for one

BLM request. Plaintiffs raised concerns about the adequacy of all disclosures. In response, Defendants have subsequently performed some supplemental searches and identified additional responsive records.

The parties will continue their good-faith efforts to resolve the outstanding issues prior to the next status report. The parties' agreement "to resolve the outstanding issues" means the parties will strive to reach agreement on the number and timing of outstanding searches that still must be done to identify and locate the documents that are responsive to Plaintiffs' requests. The parties do not agree whether all issues in this litigation should be addressed sequentially. Their respective positions are laid out below.

<u>Plaintiffs' Position</u>

Outstanding issues for each agency should be addressed simultaneously, not sequentially. To achieve efficient and timely production of documents pursuant to all FOIA requests, each agency should simultaneously proceed with resolution of outstanding issues related to an agency's particular searches for records. There is no logical reason to conflate the review and processing duties of different agencies in this context because there is no additional burden imposed on one agency when a sister agency is simultaneously engaged in a completely independent FOIA review and disclosure process. In addition, resolution of the substantive issues Plaintiffs have raised regarding already disclosed records should not be postponed until the agency has disclosed all records for all requests. Addressing issues as they arise in the disclosure process in this manner is the most efficacious and efficient use of the parties' time. All requests are over a year beyond FOIA's statutory deadlines and concern an ongoing administrative process related to the Arctic National Wildlife Refuge for which they are needed. Plaintiffs seek the records to

inform the public about this process and desire the records in the most expedient manner possible.

Defendants' Position

It is Defendants' position that parties should address the outstanding issues sequentially. DOI will turn to resolving issues with the BLM requests once the OS supplemental searches have been narrowed.

### The BLM Requests

BLM issued a response for the "BLM S.O. 3355 Request" (BLM-2019-00324) on October 15, 2019, and for the "BLM Government Shutdown Request" (BLM-2019-00963) on January 30, 2020. The parties are working together to address Plaintiffs' concerns regarding the sufficiency of BLM's response to these two requests. Defendants' have not yet substantively responded to these issues and have stated they will not do so until all current narrowing issues regarding the requests to the Office of the Secretary are resolved. The parties will continue to work to resolve this dispute without the Court's direct involvement.

BLM completed the sixth interim production for the "BLM Draft EIS Deliverable Request" (BLM-2019-00383) on June 29, 2020 and released 709 pages of records. As the productions proceed, the parties will continue to confer on any open issues concerning the sufficiency and timing of completed productions and attempt to resolve disputes without the Court's direct involvement.

BLM has also completed searches for the fourth BLM request, BLM Seismic Communications Request" (BLM-2019-00483). Defendants' January estimate, minus pages processed since then, leaves 10,885 pages yet to be processed: 1,485 pages for the Draft EIS Deliverable request and 9,400 pages for the Seismic Communications request. Currently, Defendants have

committed to a processing rate of 500 pages per month. At the committed processing rate, production will be not be completed until sometime in 2022, not including any records identified from supplemental searches. The parties do not agree on the processing rate for these remaining requests; their positions are set out below.

### Defendants' Position

The BLM Alaska FOIA office's resources are already overextended as it processes requests for this case, for the related *Defenders of Wildlife v. DOI, et al.*, Civ. A. No. 18-2572 (CJN) (*Defenders*) case, and for dozens of other related requests that are not in litigation. The fastest rate at which BLM Alaska can process potentially responsive records is the current rate of 500 pages per month. However, BLM is willing to work with Plaintiffs to further narrow and/or prioritize material within each request, so that material of most interest to Plaintiffs is provided first, and which will likely shorten the overall time required to process all records of interest. Defendants would prefer to resolve any search parameter issues sequentially, and do not believe this issue should be addressed until issues with the BLM S.O. 3355 Request are resolved.

BLM does not agree that draft EIS records should not be counted against the 500 pages of record review. BLM also cannot agree to release draft records potentially containing privileged information under the FOIA without those records undergoing review.

### Plaintiffs' Position

Disclosure at a rate of 500 pages per month will take over one year and eight months to review the collected records from today. Plaintiffs stress that this is too long as the records are relevant to an ongoing administrative proceeding and are sought to increase public understanding and engagement now, and to provide public oversight of BLM's activities related to the implementation of an oil and gas leasing program on the Coastal Plain of the Arctic National Wildlife

4

Refuge. Therefore, a higher disclosure rate is necessary. *See, e.g.*, *Wildearth Guardians v. BLM*, 18-cv-890, Joint Status Report at 2–3 (Sept. 5, 2018) (explaining the agency processed 8,360 pages within three months). This accords with Plaintiffs' Position, *infra*, regarding disclosure rate for OS Requests (explaining the problems with a protracted disclosure rate and identifying cases where higher disclosure rates occur).

Plaintiffs anticipate the remaining pages of the BLM Draft EIS Deliverable Request will be primarily drafts and deliverable documents for the Coastal Plain Leasing EIS. Plaintiffs believe that drafts of the Environmental Impact Statement should not count against the 500 pages the Defendants review per month because these drafts are mostly repetitive and the labor to review a draft EIS vs. emails or other records is not equivalent and should not be treated as such here. Plaintiffs believe the agency should disclose the entirety of these draft EIS records at this time.

In this regard, Plaintiffs note that the Council on Environmental Quality's NEPA regulations require that an agency shall make any documents "underlying" environmental impact statements publicly available. 40 C.F.R. § 1506(f). Plaintiffs contend that the draft EIS documents responsive to their FOIA request are records "underlying an EIS" and thus are presumptively publicly available without undergoing review as contemplated by Defendants.

Plaintiffs believe the parties should address these issues concurrently with any questions about the adequacy of other completed requests. At this point, Plaintiffs continue their current commitment to work collaboratively with Defendants and prefer to work out these issues in this manner.

<u>The Parties' Agreement on Processing the BLM Draft EIS Deliverable Request and the BLM Seismic Communications Request</u>

The parties do not agree on the review and disclosure rate for these requests and whether issues relating to the sufficiency of the disclosures should be resolved sequentially or concurrently. The parties have not made progress on resolving these issues since the March 18, 2020 JSR. The parties agree to work collaboratively over the next month to resolve these issues without direct Court involvement.

The parties will work together to prioritize the order in which records are disclosed for the BLM Seismic Communications Request. Defendants intend to provide a list of the different searches and search parameters with the approximate volumes of records potentially responsive to each by August 14, 2020. Once Plaintiffs receive the volume estimates of Defendants' searches, they will work with Defendants to facilitate timely disclosure of non-exempt responsive records.

### The OS Requests

The OS issued final responses for all four OS requests — the "DOI Government Shutdown Request" (OS-2019-00520) on October 15, 2019, the "DOI Porcupine Caribou Herd Request" (OS-2019-0378), on January 14, 2020, the "DOI S.O. 3355 Request" (OS-2019-0314) on February 10, 2020, and the "DOI Seismic Communications Request" (OS-2019-0565) also on February 10, 2020. Plaintiffs have concerns regarding the sufficiency of all OS's responses to the above requests.

In response to Plaintiffs' concerns, the parties negotiated and agreed upon search terms to be used in supplemental electronic email searches for the four OS requests. OS sent Plaintiffs the supplemental search results for all requests. OS's supplemental search located 149,021 potentially responsive pages for three of the requests and none for the DOI Seismic Communications

6

Request. The parties agreed to initially narrow the supplemental search results, which still produced an estimated 131,504 pages of potentially responsive records. Plaintiffs also proposed a priority order and streamlining approach and Defendants will apply the narrowing criteria beginning with the August release. OS released their second disclosure on July 15, 2020.

The parties do not agree on the appropriate rate of record review moving forward, their positions are laid out below. The parties will continue to work together to prioritize disclosure order and to resolve this dispute without the Court's involvement.

<u>Plaintiffs' Position</u>

Plaintiffs asked Defendants for a higher processing rate of 2,000 pages of records for review per month given the considerable volume of newly identified records. Defendants have agreed to higher review rates in other matters in this circuit. *See e.g. Allen v. Dep't of the Interior*, No. 17-cv-2656 (D.D.C. 2017) (commitment to process 1,000 pages per month); *Ctr. for Biological Diversity v. Dep't of the Interior*, No. 17-cv-1595 (D.D.C. 2017) (DOI processing at a rate of approximately 1,500 pages every 30 days). Even if the Plaintiffs were to accept all Defendants' suggested narrowing criteria it will take over 17 years to disclose the records at a rate of 500 pages per month. Even at a rate of 2,000 pages per month, it will still take over six years to complete this record disclosure. Plaintiffs understand that Defendants have agreed to higher rates in other cases and believe, given the volume of the record and current review rate, a higher processing rate of 2,000 pages or more per month is necessary to receive these records in a reasonable and relevant timeframe.

While Plaintiffs continue to work with Defendants to narrow these issues, a higher disclosure rate is necessary to ensure disclosure in a reasonable time given the considerable volume of records identified as responsive. Plaintiffs reiterate that they requested these records to inform

the public on the currently ongoing administrative process related to oil and gas development in the Arctic National Wildlife Refuge and seek to receive them in a reasonable and relevant timeframe. Plaintiffs believe that this delay in proper searching and identification of responsive records and prolonged disclosure as further frustrating their ability to disseminate this information during this timeframe. The agency could issue a Record of Decision for this administrative process at any time and these records are relevant to better understand the progression and timing of this process. All requests at issue are a year overdue past FOIA's statutory deadlines.

Defendants' Position

The OS FOIA office does not have sufficient resources available to accommodate Plaintiffs' request to increase the processing rate to 2,000 pages. The OS FOIA Office can continue to process potentially responsive records at the current rate of 500 pages per month and remains willing to confer with Plaintiffs to further narrow the request and/or prioritize the requested material to expedite the remainder of the review. OS FOIA processes records on a first-in, first-out basis and has dozens of pending FOIA cases. OS FOIA processes approximately 500 pages per month for every case, with very few exceptions. Plaintiffs are not entitled to receive records faster than any other requester or plaintiff.

### The FWS Request

As detailed in the December 13, 2019 Joint Status Report, the parties disagree about the extent to which the Plaintiffs' request to FWS — the "FWS Seismic Communications Request" (FWS-2019-00782) — overlaps with another FWS request at issue in the *Defenders* case also before this Court.[1] On July 22, 2020, the Defendants provided a link to a FWS report not covered

---

[1] *See* Civ. A. No. 18-2572 (CJN).

in the Defenders' search. Parties believe that this disclosure resolves the overlap issue. Plaintiffs received the most recent FWS disclosure from the *Defenders* case on June 30, 2020.

## The Parties' Joint Proposed Schedule

The parties request that the Court direct the parties to file another Joint Status Report on or before August 26, 2020, to update the Court on the status of Defendants' productions and any other issues the parties wish to bring to the Court's attention, and to propose a schedule for further proceedings.

| | |
|---|---|
| Dated: July 24, 2020 | Respectfully submitted, |
| /s/ Maresa Jenson | MICHAEL R. SHERWIN |
| Maresa Jenson (AK Bar No. 1805048) | Acting United States Attorney |
| Brook Brisson (AK Bar No. 0905013) | |
| (*pro hac vice*) | DANIEL F. VAN HORN |
| TRUSTEES FOR ALASKA | D.C. Bar 924092 |
| 1026 W. Fourth Avenue, Suite 201 | Chief, Civil Division |
| Anchorage, AK 99501 | |
| Phone: (907) 276-4244 | By: /s/ Kathleene Molen |
| mjenson@trustees.org | KATHLEENE MOLEN |
| bbrisson@trustees.org | |
| | Assistant United States Attorney |
| /s/ David Bahr | 555 4th Street, N.W. |
| David Bahr (D.C. Bar No. OR0001) | Washington, D.C. 20530 |
| Bahr Law Offices, P.C. | (202) 803-1572 |
| 1035 ½ Monroe Street | Kathleene.Molen@usdoj.gov |
| Eugene, OR 97402 | |
| (541) 556-6439 | *Counsel for Defendants* |
| davebahr@mindspring.com | |
| | |
| *Counsel for Plaintiffs* | |

**SO ORDERED.**

_____               _____
Date                                                    CARL J. NICHOLS